MEM. — WHITMAN, C. J. was not present at the hearing of the cases this term.

## SHEPARD CAREY *versus* HIRAM ESTY.

Though a petitioner in bankruptcy may have had an *equitable* interest in land, which had been sold by the *legal* owner, who had taken a note payable to himself for the purchase money, it would not certainly follow that the petitioner in bankruptcy had any interest in the note; nor would an omission to specify the note in the schedule, be conclusive evidence of fraud on his part, such as to invalidate his certificate of discharge.

ACTION of debt on a judgment. The case was tried in the District Court, ALLEN, J. presiding. The defendant offered a certificate of discharge in bankruptcy, and the plaintiff charged a fraudulent concealment by the defendant, and offered testimony from which it appeared, that in 1830, defendant entered upon unimproved land, belonging to one Houlton, and erected buildings and made improvements to the value of $1000 or $1300; that he resided on the same until 1841, calling it his own and paying the taxes; that in 1841, Houlton conveyed it to Putnam & Co. for $1300, for which they gave their note to said Houlton; that Putnam & Co. conveyed the same to one Doyle for $1000, of which $300 was paid in a claim Doyle

held against defendant due prior to his proceedings in bankruptcy, without objection of the defendant, and the balance was accounted for by Putnam to defendant; that in 1844, Putnam & Co. received from Houlton their note of $1300, without any consideration being given therefor.

The defendant did not place the land or the notes, or any interest in the same, among the assets in his schedule in bankruptcy.

From the testimony of *Samuel Houlton,* it appeared that he owned the land when defendant moved on to it, and owned it with the improvements when he sold it to the Putnams; that defendant never had any interest therein; that he never agreed with the defendant to hold the same for his benefit, and convey it to him on his request; that defendant had no interest in the notes for $1300, and received no benefit from them. He stated that defendant was his agent and erected the buildings and made the improvements out of materials furnished by him, the witness, and that he had accounted to the defendant for the same. Defendant never bought and never agreed to buy the premises of him.

The plaintiff offered evidence to show that defendant participated in negotiating the sale to the Putnams, and that it was understood between the defendant and Houlton, that said Houlton held the premises and the notes received therefor, for the use of the defendant. He offered no evidence of a deed, agreement or writing of any kind from said Houlton in relation thereto, or to said notes. There was evidence showing that a note, due from defendant, had been paid from the proceeds of the property since he had obtained his certificate. There was also testimony on the part of defendant going to show that Putnam & Co. had accounted to Houlton for the $1300 note.

The defendant requested the Court to instruct the jury, that, if the defendant had no title or claim to the land or notes beforementioned, and no interest therein which he or his assignee in bankruptcy could recover in any action or process at law, or in equity, and the jury were satisfied from the evidence, that

such was the fact; then he was not bound to state any thing in relation thereto, in his schedule in bankruptcy; and the omission would not be sufficient to impeach his certificate of discharge, unless he had voluntarily deprived himself of such title, claim or interest for the purpose of defrauding his creditors, or in fraud of the bankrupt act.

This instruction the Court declined to give, but among other things did instruct the jury, that one question for them to determine was, whether the defendant at the time had any claim or equitable interest in the notes given by Putnam to Houlton, for the land, and in the determination of that question, they would consider what interest, if any, defendant had in the land conveyed to Putnam; that although the title, till conveyed to said Putnam, remained in Houlton, yet if the defendant had paid him money or its equivalent for the land, a trust would result to defendant; that if he had such interest in the land, he would also have an interest in the notes given for the same; and if, on the whole testimony, the jury believed that defendant was equitably entitled to the whole or a part of the money due on said notes, although there was no written contract or declaration of trust between Houlton and defendant, it was the duty of defendant to include it in his schedule of assets in bankruptcy; that if its omission was designed, it would be such a concealment as would render the certificate of discharge void and of no effect.

The jury found a verdict for plaintiff. Defendant filed exceptions.

*Washburn*, for defendant, contended that there was no fraud which could avoid the certificate.

Defendant had no legal title to the land. The title had passed to *bona fide* purchasers a year before he made his application.

Defendant had no interest in the proceeds of that land, or in the note. And if he ever had any interest in it, he certainly had none at the time of making his schedule; for then, by the plaintiff's own showing, the note had been already paid. The note was paid in 1841, though it was not given up till 1844.

The instructions requested by defendant, should have been given. The facts warranted and required it. There was no agreement or understanding of any kind, between Houlton and defendant, that defendant should have any interest in the land; but Houlton made the deed to Putnam, and took to himself the note for the consideration. This state of facts required substantially the instructions asked for.

The instructions given were erroneous, calculated to mislead the jury, and uncalled for by the evidence.

The Judge instructed the jury " that one question for them to determine was, whether defendant, at the time, had any equitable interest in the note from Putnam to Houlton." Now whether defendant had or not an interest in the note, it had been paid and was due four months before defendant's application in bankruptcy.

The Court further instructed the jury, " that although the title, till conveyed to said Putnam, remained in said Houlton, yet, if defendant had paid him money or its equivalent for the land, a trust would result to the defendant." It could not be an express trust, for there is no written declaration or evidence of such trust. It is not an implied or resulting trust. " To raise a resulting trust, by implication of law, in favor of one who pays the purchase money, the payment must be a part of the original transaction; the trust cannot arise from subsequent payments." *Buck* v. *Pike*, 2 Fairf. 1.

It is not even pretended that there was a payment by defendant to Houlton, at the time of the original transaction. There was no deed till ten years after defendant entered on the land, and no deed at all from Houlton to any one, for the use of defendant. So also there could be no trust growing out of any claim for betterments, defendant holding in submission to Houlton.

*Carr*, for plaintiff. Defendant had an interest in the land or the note given for it. It is not contended that Houlton could have been compelled by defendant to give him a deed; but on refusal, he would have been liable to defendant for money expended. 5 Mass. R. 137; 14 Mass. R. 68; 16 Mass. R. 162; 6 Mass. R. 394; 7 Metc. 62 and 447.

A trust would result to defendant for the notes or the land. 10 N. H. R. 117 ; 4 Kent, 306 ; 3 Johns. R. 216 ; 3 Mason, 364.

Houlton received pay for the land in 1830, or never received any ; as he gave up in 1844 the note received in 1841, on Putnam's accounting to defendant for consideration for the purchase.

Defendant says the note was paid in 1841. No such point was made at the trial, nor does it appear as a fact in the case. Houlton was present and testified, and must have known, but he did not state any such fact.

TENNEY, J. — The defendant relies upon his discharge in bankruptcy to defeat this action. If this is successfully impeached, the plaintiffs are entitled to recover. They attempt to do this by proof of a wilful omission of the defendant to enter upon his schedule of assets a certain note against Jay S. Putnam & Co., alleged in the plaintiff's specification to belong to the defendant. To support this ground they introduced evidence, that in 1830, the defendant entered upon a parcel of unimproved land, belonging to one Houlton, erected buildings and made other improvements thereon to the value of from $1000 to $1300 ; he resided on the land and paid the taxes ; that in 1840, Houlton conveyed the land with the improvements to Putnam & Co., and took therefor, their note for $1300 ; and in the same year Putnam & Co. conveyed the land and improvements to one Doyle for the consideration of $1000, $300 of which was discharged by a debt owed by the defendant to Doyle before his bankruptcy, without any objection of the defendant, and the balance was accounted for to the defendant by Putnam & Co. ; and in the spring of 1844, Putnam & Co. received their note from Houlton without consideration or promise for value. The plaintiffs also adduced evidence tending to show, that the defendant participated in negotiating the sale to Putnam & Co., and that it was understood between Houlton and the defendant, that the former held the land and improvements, and the note received therefor, for

the use of the latter. But no evidence was offered by the plaintiff, that the defendant ever had a deed of the land, or written agreement, declaration of trust, or other writing from Houlton in relation thereto, or to the note.

The defendant's petition in bankruptcy was filed on May 25, 1842, and the discharge obtained Dec. 13, 1843.

The instructions of the Court to the jury required them to find the discharge void, if the omission to include in the schedule, the note against Putnam & Co. was designed, and if the defendant was equitably entitled to the whole or a part of that note; that he had an equitable interest in the note, if he had such in the land, for which the note was given; and that he had an equitable interest in the land, if he had paid money therefor. The jury must have understood, that the discharge was valid as a defence, or otherwise, according as they should find, whether the defendant had or had not made payments for the land, the title of which had never been in him, if the omission was wilful.

It does not appear, under what agreement the defendant occupied the land, and made the improvements, or whether there was any contract between him and Houlton, upon the subject of his occupation; and without such evidence it could not be known fully what were their respective rights. If the defendant was at first a disseisor, he may have acquired a legal interest in the improvements, and payments may have been made subsequently, in order to obtain a title to the land by virtue of some contract. Or he may have occupied the land from the first in submission to the rights of Houlton, and paid money or its equivalent under an agreement between them. Whether he would have a legal or equitable interest in the land, or in the note, would be determined by the evidence and the finding of the jury, under proper instructions from the Court.

If the note against Putnam & Co., was outstanding and unpaid, at the time the defendant filed his petition in bankruptcy, and was wholly or partially the property of the defendant, there certainly would have been a propriety in entering

it upon the schedule of assets, and stating the interest of the defendant therein. But if the note had been paid in full prior to the filing of the petition, though not actually in the possession of the makers; or if paid to the defendant so far as he had an interest therein, it would be otherwise. And the evidence of the plaintiff would seem to authorize the conclusion, that the note was in one or the other of these conditions. But if it were unpaid when the petition was filed, an equitable interest of the defendant would not necessarily follow from the fact that he had paid money or its equivalent for the land. The jury were required by a rule of law, to pronounce the discharge void, and therefore not a good defence, if they found certain facts, which alone would not be sufficient for such a purpose.                              *Exceptions sustained.*